IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **QUALITY PLUS SERVICES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 3:16cv727 |
| ) | |
| **AGY AIKEN LLC,** ) | |
| ) | |
| **Defendant.** ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE PROCEEDING AND COMPEL ARBITRATION

Defendant AGY Aiken LLC ("AGY") files this Memorandum in Support of its Motion to Dismiss, or in the Alternative, to Stay the Proceeding and Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA").[1]  For the reasons set forth below, AGY's Motion should be granted and the Complaint should be dismissed in favor of arbitration.  In the alternative, this Court should stay this matter and compel arbitration.

**I.   INTRODUCTION**

Plaintiff Quality Plus Services, Inc.'s ("QPS") initially filed this lawsuit in Virginia state court, in violation of the valid and enforceable arbitration clause that it agreed to in conjunction with its acceptance of purchase orders from AGY.  Importantly, each purchase order contained AGY's Terms and Conditions of Purchase ("T&C").  *See* Kessing Decl. ¶ 6 and **Exhibit A**.  By accepting and filling AGY's orders, as reflected in the AGY purchase orders, QPS "agree[d] to

---

[1] As explained in detail in Part III.C *infra*, "[a] court may dismiss or stay a suit that is governed by the FAA."  *Hawthorne v. BJ's Wholesale Club*, No. 3:15cv572, 2016 U.S. Dist. LEXIS 114969, at *19 (E.D. Va. Aug. 26, 2016) (quoting *Chronister v. Marks & Harrison, P.C.*, No. 3:11cv688, 2012 U.S. Dist. LEXIS 38677, at *4 (E.D. Va. Mar. 21, 2012)).

[the] terms and conditions," including that the T&C "appli[es] to all purchase orders." T&C ¶ 1. By clear and plain language, the T&C requires arbitration of disputes arising out of the agreement between QPS and AGY. T&C ¶ 13 ("Arbitration Clause"). QPS's breach of contract/unjust enrichment claim unequivocally falls within the scope of arbitrable claims under the T&C and must be compelled to arbitration.

As the United States Supreme Court has confirmed, the FAA reflects a "liberal federal policy favoring arbitration," requiring courts to enforce arbitration agreements according to their terms, especially where the parties seek to "achieve streamlined proceedings and expeditious results," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011). Here, QPS agreed to pursue its claims through arbitration, and the T&C's Arbitration Clause is enforceable under state contract law.

Accordingly, pursuant to the FAA and applicable case law, AGY respectfully moves the Court to dismiss and compel arbitration of QPS's Complaint pursuant to the Arbitration Clause in the T&C. In the alternative, AGY asks the Court to stay this matter pending arbitration.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. FACTUAL BACKGROUND[2]

AGY operates a plant in Aiken, South Carolina. Compl. ¶ 6. In early 2015, AGY and QPS contracted for QPS to perform certain structural and construction work at AGY's Aiken plant, including demolishing existing furnaces, engaging in repairs to one of the plant's hallways, and constructing three internal floors ("the Work"). *Id.* ¶¶ 7, 9. AGY issued individual purchase orders to QPS for the Work. *Id.* ¶ 9. AGY issued nineteen (19) purchase orders to QPS from

---

[2] For purposes of this motion, AGY assumes the truth of any well-pled factual allegations contained in the Complaint. AGY denies QPS's factual allegations and denies any liability for the claims set forth in the Complaint.

South Carolina for the Work.  *Id.* ¶ 10, 12.  At some point, QPS issued invoices for the Work covered by AGY's purchase orders.  *Id.* ¶ 15.  QPS contends that three (3) of the nineteen (19) invoices remain unpaid.  *Id.* ¶ 16.

AGY's T&C accompanied each purchase order.  Kessing Decl. ¶ 6; **Exhibit A.**  QPS agreed to abide by the T&C when it "accept[ed] or fill[ed] [the purchase] order or render[ed] services under [the purchase] order."  T&C ¶ 1.  QPS also agreed that the T&C applied to all purchase orders and would "prevail over any inconsistent provisions in any form or other paper submitted by [QPS] except as expressly set forth herein."  *Id.*  Importantly, "[a]greements for sales created by [QPS's] acceptance of these terms shall be deemed to have been formed in the state of South Carolina, regardless of the location of [QPS]."  *Id.*

In the T&C's Arbitration Clause, QPS and AGY agreed to arbitrate their disputes:

> *Any dispute or cause of action* [AGY] and [QPS] may have with one another arising out of this agreement *shall be finally settled by arbitration* in accordance with the Commercial Arbitration Rules of the American Arbitration Association and in accordance with the substantive laws of the state of South Carolina, excluding conflicts of laws provisions of such laws.

*Id.* ¶ 13 (emphasis added).  The T&C specifically authorizes "[e]ach party . . . to seek judicial assistance to compel arbitration . . . ."  *Id.*

QPS accepted the T&C and the Arbitration Clause when it issued invoices and performed Work pursuant to the purchase orders.  Thus, QPS agreed to arbitrate any dispute with AGY arising out of the purchase orders.  Despite reminders of its contractual arbitration agreement and requests from AGY that QPS transfer this case to arbitration, QPS has failed and refused to honor its contractual agreement to arbitrate and instead filed this action alleging breach of contract and, in the alternative, unjust enrichment.  *See generally* Compl.

B.     **PROCEDURAL HISTORY**

On or about June 13, 2016, QPS filed this action in the Circuit Court for the City of Petersburg, Virginia ("Circuit Court"). *See* Not. Removal ¶ 1, ECF No. 1. On August 31, 2016, QPS filed a Motion, by Special Appearance, to Quash Defective Process and Dismiss Case for Lack of Personal Jurisdiction ("Defective Process and Personal Jurisdiction Motion") in the Circuit Court and removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1446. AGY's Notice of Removal expressly reserved the right to file any defenses, objections or motions available to it under applicable law, expressly reserved the right to move for dismissal under Fed. R. Civ. P. 12, and stated it would file its responsive pleadings according to the time period allowed by Fed. R. Civ. P. 81(c)(2)(C). AGY now seeks enforcement of the Arbitration Clause contained in the T&C accompanying each purchase order at issue in this case.[3]

### III.    LAW AND ARGUMENT

The Arbitration Clause mandates that "[a]ny dispute or cause of action [AGY] and [QPS] may have with one another arising out of this agreement *shall be finally settled by arbitration . . . .*" T&C ¶ 13 (emphasis added). "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels*, 252 F.3d at 710 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995)). Further, any state law that prohibits arbitration of particular claims or requires certain types of procedures is preempted by the FAA. *See, e.g., AT&T Mobility LLC*, 563 U.S. at 341.

---

[3] Contemporaneous with this filing, AGY has also filed a Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue or, in the Alternative, Motion to Transfer Venue. AGY does not waive its personal jurisdiction and venue objections by filing this arbitration motion.

The Arbitration Clause is valid, enforceable, and reaches the claims at issue in the Complaint. Therefore, pursuant to the FAA, this Court must dismiss the Complaint in favor of arbitration of QPS's claims according to the Arbitration Clause contained in the T&C.

### A. Federal Policy Strongly Favors Enforcement of Arbitration Agreements

In enacting the FAA, Congress declared a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, (1983); *see also Equal Emp't Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "Congress passed the FAA 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" *Hawthorne*, 2016 U.S. Dist. LEXIS 114969, at *9 (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000) (alteration in original)). Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation undergirds this policy favoring arbitration. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001). The FAA's arbitration policies "are to be robustly followed." *Moses v. CashCall, Inc.*, 781 F.3d 63, 71 (4th Cir. 2015) (citing cases). Furthermore, the Supreme Court of the United States explains that doubts as to the arbitrability of any issues are to be resolved, whenever possible, in favor of arbitration:

> Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration... The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone*, 460 U.S. at 24-25.

Pursuant to the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 limits the scope of the FAA to written contracts involving

5

commerce. *Id.* "The effect of th[is] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone.*, 460 U.S. at 24.

Once a court determines that the parties entered into a written agreement to arbitrate the underlying dispute, Section 4 directs courts to compel arbitration if necessary. 9 U.S.C. § 4. The FAA gives district courts no discretion to do otherwise:

> By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Thus, insofar as the language of the Act guides [the] disposition of [a] case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4); *see Hightower*, 272 F.3d at 241; *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001).

Evincing the strong federal public policy in favor of enforcing arbitration agreements, courts have repeatedly enforced arbitration provisions. *See, e.g., Hawthorne*, 2016 U.S. Dist. LEXIS 114969, at *19 (granting motion to compel arbitration and motion to dismiss and dismissing action); *Boatright v. Aegis Def. Servs., LLC*, 938 F. Supp. 2d 602, 611 (E.D. Va. 2013) (staying case and compelling arbitration); *see also Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (noting the U.S. Supreme Court's regard for arbitration).

The United States Court of Appeals for the Fourth Circuit has explained that, to compel arbitration under the FAA, AGY must demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)). Each of these elements exists in this case.

Thus, when evaluating this motion seeking to enforce the T&C's Arbitration Clause, this Court must order arbitration when it is satisfied that the parties agreed to arbitrate. *Craddock v. LeClair Ryan, P.C.*, No. 3:16cv11, 2016 U.S. Dist. LEXIS 49408, at *9 (E.D. Va. Apr. 12, 2016) (omissions and second alteration in original) (quoting *Lorenzo v. Prime Commc'ns, L.P.*, 806 F.3d 777, 781 (4th Cir. 2015)). The question of whether the parties agreed to arbitrate is resolved by application of state contract law, in this case, South Carolina contract law.[4] *Id.*; *see also First Options of Chi.*, 514 U.S. at 944 (court should apply "ordinary state-law principles that govern the formation of contracts."); *Arrants*, 130 F.3d at 640 ("Courts decide whether there is an agreement to arbitrate according to common law principles of contract law.").

    **B.    The Arbitration Clause Constitutes a Valid, Enforceable Agreement to Arbitrate and Covers the Claims in this Case**

The T&C's Arbitration Clause is valid, enforceable, and reaches all the claims at issue in the Complaint. Therefore, pursuant to the FAA, this Court must dismiss the Complaint in favor of arbitration of QPS's claims according to the Arbitration Clause contained in the T&C.

---

[4] South Carolina law applies as a result of the application of Virginia's choice of law rules and by operation of the T&C. *See Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 859 (E.D. Va. 2011) (in diversity action, forum state applies its own choice of law rules); *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 728 (E.D. Va. 2012) (the nature, validity, and interpretation of a contract is governed by the 'law of the place where made); *Wood v. Symantec Corp.*, 872 F. Supp. 2d 476, 481 (E.D. Va. 2012) (law of place of performance governs questions of performance and breach). The T&C expressly states that "[a]greements for sales created by [QPS's] acceptance on these terms shall be deemed to have been formed in the state of South Carolina, regardless of the location of [QPS]." T&C ¶ 1. Further, the Arbitration Clause provides for the application of South Carolina law. T&C ¶ 13.

7

1. **The Parties Agreed to Arbitration of Claims and the Arbitration Clause Encompasses the Current Dispute**

QPS and AGY agreed to arbitrate claims arising under the purchase orders AGY issued for Work QPS performed at AGY's Aiken plant. Pursuant to 9 U.S.C. § 4, this Court must compel arbitration.

To form a valid contract, South Carolina law requires "offer, acceptance, and valuable consideration." *Electro-Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter, Inc.*, 357 S.C. 363, 368, 593 S.E.2d 170, 173 (Ct. App. 2004) (noting the "necessary elements of a contract"). Additionally, "the formation of a contract requires 'a meeting of the minds of the contracting parties in regards to the essential terms.'" *Gordon v. TCB Retail Group, Inc.*, No. 2:14cv3365, 2016 U.S. Dist. LEXIS 106205, at *25 (D.S.C. Aug. 11, 2016) (quoting *Fulmer v. London, Liverpool & Globe Fire Ins. Co.*, 172 S.C. 525, 527, 174 S.E. 466, 467 (1934)).

Here, QPS's agreement to the T&C and the Arbitration Clause constitutes a valid contract. First, QPS accepted the T&C by filling AGY's purchase orders and issuing invoices to AGY. Compl. ¶ 15. Pursuant to S.C. Code Ann. § 36-2-207,[5] the purchase orders' T&C and

---

[5] Section 36-2-207 states in full:

**(1)** A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
**(2)** The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
  **(a)** the offer expressly limits acceptance to the terms of the offer;
  **(b)** they materially alter it; or
  **(c)** notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

8

Arbitration Clause became part of the contract between AGY and QPS. *See Mace Indus., Inc. v. Paddock Pool Equip. Co.*, 288 S.C. 65, 70–71 (Ct. App. 1986) (additional terms of purchase order became part of contract where both parties were merchants, offer did not expressly limit acceptance to the terms of its offer, and additional terms did not materially alter the proposed contract between the parties). As in *Mace Industries*, both AGY and QPS are sophisticated merchants, no acceptance limitations existed, and the additional terms, specifically the Arbitration Clause, did not materially alter the contract between AGY and QPS regarding the Work.[6]

Second, valuable consideration supported the Arbitration Clause because both AGY and QPS agreed to arbitration. *See Hooters of Am. v. Phillips*, 39 F. Supp. 2d 582, 617 (D.S.C. 1998) ("Often, consideration for one party's promise to arbitrate is the other party's promise to do the same."). Thus, a valid and enforceable contract between the parties existed.

---

> **(3)** Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.

S.C. Code Ann. § 36-2-207 (2016).

[6] In contrast, AGY expressly rejected any additional terms proposed by QPS, subject to a few limited exceptions:

> These terms and conditions of purchase . . . are the only terms and conditions applying to the sale of seller's goods and services except those which additionally relate to (i) price, (ii) quantity, (iii) delivery schedule, (iv) separate warranties, (v) payment terms and (vi) description and specifications of the goods or services, and Buyer hereby expressly rejects any terms and conditions proposed by Seller which are different from or in addition to the terms contained herein, unless expressly assented to in writing by Buyer.

T&C ¶ 1.

Furthermore, QPS's breach of contract/unjust enrichment claim clearly falls within the scope of the Arbitration Clause. The Arbitration Clause applies to "[a]ny dispute or cause of action" . . . "arising out of this agreement" and contains not limitations or exclusions. T&C ¶ 13. QPS's breach of contract/unjust enrichment claim plainly constitutes a cause of action arising out of the agreement between QPS and AGY regarding the Work. Thus, the parties entered into a valid agreement to arbitrate the claims in the Complaint.

## 2. No Facts Warrant Revocation of the Arbitration Agreement

Although parties may seek revocation of an agreement to arbitrate "under such grounds as exist at law or in equity, including fraud, duress, and unconscionability," no circumstances warrant revocation of the agreement to arbitrate, and QPS cannot make the required showing. *Lucey v. Moore*, 401 S.C. 122, 139 (Ct. App. 2012); *see also* 9 U.S.C. § 2; *Hawthorne*, 2016 U.S. Dist. LEXIS 114969, at *13–15.

First, as alleged in the Complaint, QPS and AGY performed their obligations with respect to sixteen (16) of nineteen (19) total purchase orders without dispute and with each purchase order incorporating the T&C and Arbitration Clause. *See* Compl. ¶ 16 (alleging only three (3) of nineteen (19) invoices remain unpaid). QPS never objected to the Arbitration Clause at the time AGY issued the purchase orders or when QPS began performing the Work. Kessing Decl. ¶ 10.

Second, QPS and AGY are sophisticated businesses. *See* Compl. ¶ 4. Both possess the business judgment necessary to be aware of the implications of the arbitration agreement and the decision to forgo negotiating one agreement for the Work, instead opting for individual purchase orders and invoices. AGY and QPS engaged in an arms-length negotiation, such that their agreement to arbitrate is not unconscionable. *See Carolina Care Plan, Inc. v. United HealthCare*

10

*Servs., Inc.,* 361 S.C. 544, 555, 606 S.E.2d 752, 757 (2004) (finding plaintiff "failed to allege any facts that would show the clause was unconscionable. Both parties were sophisticated entities.")

Finally, the Arbitration Clause contains substantively reasonable terms. The Commercial Arbitration Rules of the American Arbitration Association and substantive law of South Carolina will govern the arbitration proceedings, and each party has the opportunity to select an arbitrator, with the third arbitrator selected by the first two. T&C ¶ 13.

Thus, no reasons exist to justify revocation of the agreement to arbitrate.

### C. Dismissal is the Appropriate Remedy

Because all of QPS's claims are arbitrable, this Court should exercise its discretion to dismiss this case. "A court may dismiss or stay a suit that is governed by the FAA." *Chronister*, 2012 U.S. Dist. LEXIS 38677, at *4 (citing 9 U.S.C. § 3; *Choice Hotels*, 252 F.3d at 709–10). AGY seeks enforcement of the Arbitration Clause, and thus sufficiently "invoke[s] the full spectrum of remedies under the FAA, including a stay under [9 U.S.C.] § 3." *Choice Hotels*, 252 F.3d at 710. However, when "all of the issues presented are arbitrable, then [this Court] may dismiss the case." G*reenville Hosp. Sys. v. Emp. Welfare Ben. Plan for Emps. of Hazelhurst Mgmt. Co.*, 628 F. App'x 842, 845–46 (4th Cir. 2015) (citing *Choice Hotels*, 252 F.3d at 709–10). No question exists that the Court has the discretion to stay or dismiss a case when all claims are subject to arbitration." *Hawthorne*, 2016 U.S. Dist. LEXIS 114969, at *19–20 (citing *Choice Hotels*, 252 F.3d at 709–10). Because all of QPS's claims are arbitrable, this Court should exercise its discretion to dismiss the case. *Id.* Retaining this case to stay the action and compel arbitration would only serve to waste juridical resources. In the event this Court decline to dismiss, this Court should stay this action and order the parties to arbitrate pursuant to the Arbitration Clause. 9 U.S.C. § 3.

## IV. CONCLUSION

The FAA mandates the enforcement of arbitration agreements. Section 4 of the Act specifically authorizes a party aggrieved by another's failure to abide by its legal obligation to petition a court for an order compelling compliance. 9 U.S.C. § 4. The FAA mandates that courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists and affords no discretion on this issue. 9 U.S.C. §§ 3, 4. *See also Dean Witter Reynolds*, 470 U.S. at 218; *Alford*, 975 F.2d at 1164.

In this case, the indisputable facts demonstrate that (1) QPS agreed to be bound by the T&C; (2) the T&C contains a valid and enforceable Arbitration Clause; and, (3) the Arbitration Clause in the T&C covers QPS's breach of contract/unjust enrichment claims. Thus, as QPS's claims clearly fall within the scope of the Arbitration Clause in the T&C, the Court should dismiss QPS's Complaint and order the parties to pursue arbitration.

Accordingly, AGY respectfully requests that the Court grant its Motion to Dismiss, or in the Alternative, to Stay Proceedings and Compel Arbitration.

Dated: September 7, 2016

Respectfully submitted,

**AGY AIKEN LLC**

                /s/
Bradfute W. Davenport, Jr. (Va. Bar No. 12848)
brad.davenport@troutmansanders.com
Laura Anne Kuykendall (Va. Bar No. 82318)
la.kuykendall@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

Henry W. Brown (*pro hac vice* to be filed)

12

hbrown@nexsenpruet.com
Nexsen Pruet LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 253-8273
Facsimile: (803) 727-1415

*Counsel for Defendant AGY Aiken LLC*

## CERTIFICATE OF SERVICE

     I hereby certify that on this 7th day of September, 2016 I electronically filed the foregoing using the Court's CM/ECF system, which will send notice of electronic filing to the registered users below.

          Kristie G. Haynes, Esq.
          Quality Plus Services, Inc.
          1320 Old Chain Bridge Road, Suite 200
          McLean, Virginia 22101
          Tel:  804-863-0191
          Fax:  804-863-0284
          kristieh1@qpsisbest.com

          /s/
          Bradfute W. Davenport, Jr. (Va. Bar No. 12848)
          brad.davenport@troutmansanders.com
          Laura Anne Kuykendall (Va. Bar No. 82318)
          la.kuykendall@troutmansanders.com
          Troutman Sanders LLP
          1001 Haxall Point
          Richmond, VA 23219
          Telephone: (804) 697-1200
          Facsimile: (804) 697-1339

          *Counsel for Defendant AGY Aiken LLC*