IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

QUALITY PLUS SERVICES, INC.,

    Plaintiff,

v.                                                               Civil Action No. 3:16cv727

AGY AIKEN LLC,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on two motions filed by Defendant AGY AIKEN LLC ("AGY"): (1) the Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative, Motion to Transfer Venue (the "Motion to Dismiss or Transfer"), (ECF No. 3); and, (2) the Motion to Dismiss, or in the Alternative, to Stay the Proceedings and Compel Arbitration (the "Motion to Compel Arbitration"), (ECF No. 5). Plaintiff Quality Plus Services, Inc. ("QPS") has responded to AGY's motions, (ECF Nos. 7, 8), and AGY has replied, (ECF Nos. 10, 11). Accordingly, the motions are ripe for adjudication. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions necessary to resolve the motions. For the reasons that follow, the Court will grant the Motion to Compel Arbitration and deny the Motion to Dismiss or Transfer as moot. The Court will dismiss the action without prejudice.

### I. Procedural and Factual Background

#### A. Procedural History

QPS initially filed suit in Virginia state court, alleging two causes of action: (1) breach of contract; and, (2) unjust enrichment. AGY removed the case to this Court on the basis of

diversity jurisdiction[1] and filed two motions seeking dismissal: (1) the Motion to Dismiss or Transfer, which challenges personal jurisdiction and venue; and, (2) the Motion to Compel Arbitration, which argues that a valid and enforceable arbitration clause requires that the Court compel arbitration. QPS responded to both of AGY's motions, and AGY replied.

B.     <u>**Factual Background and the Agreement to Arbitrate**</u>[2]

AGY operates a plant in Aiken, South Carolina. In 2014 or 2015, AGY decided to modify the plant's "E-Wing." That project required, among other things, "demolishing three existing furnaces, extensive steel repairs to a large hallway/'tunnel' area[,] and new construction of three internal floors." (Compl. ¶ 7, ECF No. 1-1.) AGY did not issue a single contract for the entire project and instead contracted with QPS to perform substantial portions of it, for which the parties contracted through individual purchase orders. In all, AGY issued at least nineteen separate purchase orders to QPS. After QPS received a purchase order from AGY, QPS would issue an invoice. Three invoices allegedly remain outstanding and unpaid. QPS's suit arises from those three invoices.

AGY offers a declaration from its Purchasing Leader, Tom Kessing, which states that certain "Terms and Conditions" accompanied *each* purchase order. (Kessing Decl. ¶ 6, ECF No. 6-1.) QPS presents nothing to rebut this sworn statement. (*See* Starratt Decl. 9, ECF No. 8-

---

[1] 28 U.S.C. § 1332 confers subject matter jurisdiction when the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

[2] When a party brings a motion to dismiss for improper venue on the basis of a forum-selection clause, the United States Court of Appeals for the Fourth Circuit considers it under Federal Rule of Civil Procedure 12(b)(3). *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). A Rule 12(b)(3) motion allows the court to consider evidence outside the pleadings. *Id.* Because an arbitration clause functions as a specialized kind of forum-selection clause, *see Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012), the Court will consider evidence outside the pleadings on the Motion to Compel Arbitration.

1 ("The 'AGY Terms and Conditions of Purchase' were a separate attachment to the emails.").)

The scope of the Terms and Conditions is as follows:

> **1. Acceptance.** By accepting or filling this order or rendering services under this order, the Seller agrees to these terms and conditions, which shall prevail over an inconsistent provisions in any form or other paper submitted by Seller except as expressly set forth herein. These terms and conditions of purchase are applicable to all purchase orders and are the only terms and conditions applying to a sale of seller's goods and services except those which additionally relate to (i) price, (ii) quantity, (iii) delivery schedule, (iv) separate warranties, (v) payment terms and (vi) description and specifications of the goods and services, and Buyer hereby expressly rejects any terms and conditions proposed by Seller which are different from or in addition to the terms contained herein, unless expressly assented to in writing by Buyer. Agreements for sales created by Seller's acceptance on these terms shall be deemed to have been formed in the state of South Carolina, regardless of the location of Seller.

(AGY Terms and Conditions of Purchase ¶ 1, ECF No. 6-2.) The Terms and Conditions provide the following arbitration clause (the "Arbitration Clause"):

> **13. Disputes.** Any dispute or cause of action the Buyer and Seller may have with one another arising out of this agreement shall be finally settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and in accordance with the substantive laws of the state of South Carolina, excluding the conflicts of law provisions of such laws. Judgment upon the award rendered by the arbitrators may be enforced in any court having jurisdiction thereof. The arbitration tribunal shall consist of three arbitrators, of whom one shall be nominated by Buyer, one by Seller, and a third, who shall serve as chairman, shall be chosen by the two party-nominated arbitrators. The place of arbitration shall be Atlanta, Georgia. The award of the arbitrators shall be final and binding. The parties waive any right to appeal the arbitrage award, to the extent a right of appeal may be lawfully waived. Each party retains the right to seek judicial assistance to compel arbitration, to obtain interim relief pending arbitration, and to enforce the award of the arbitrators, including the final award.

(*Id.* ¶ 13.)

The record does not explicitly indicate whether QPS objected to the Terms and Conditions or the inclusive Arbitration Clause. QPS, however, acknowledges that it did not discuss any of the Terms and Conditions with AGY. Nonetheless, the parties disagree about whether the Terms and Conditions apply to the purchase orders at issue.

## II. Analysis

The Court finds that QPS's claims are subject to binding arbitration pursuant to the Federal Arbitration Act ("FAA")[3] because: (1) the parties agreed to the Terms and Conditions; and, (2) the scope of the Arbitration Clause covers the disputes between QPS and AGY. Accordingly, the Court will grant the Motion to Compel Arbitration and dismiss the action without prejudice. Because the Court will dismiss this action for improper venue based on the binding Arbitration Clause, the Court will deny the Motion to Dismiss or Transfer as moot.

### A. The Federal Arbitration Act[4]

Congress passed the FAA "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (alteration in original)). The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 limits the scope of the FAA to written contracts involving commerce. *Id.* "The effect of th[is] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

---

[3] 9 U.S.C. § 1 *et seq.*

[4] In its opposition, "QPS accepts for purposes of [the Motion to Compel Arbitration] that the FAA applies . . . ." (Pl.'s Mem. Opp'n 3 n.3, ECF No. 8.) The Court, therefore, need not address QPS's contention "that the purported arbitration clause . . . would not comply with" South Carolina arbitration law. (*Id.*)

Once a court determines that the parties entered into a written agreement to arbitrate the underlying dispute, Section 4 directs courts to compel arbitration if necessary. 9 U.S.C. § 4. The FAA gives district courts no discretion to do otherwise:

> By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Thus, insofar as the language of the Act guides [the] disposition of [a] case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4); *see Hightower v. GARI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001).

### B. The Court Will Grant the Motion to Compel Arbitration

To compel arbitration under the FAA, AGY must demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and[,] (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

*Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (citing *Rota–McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)).[5] QPS does not contest the existence of a dispute between the parties, the relationship of the transaction to

---

[5] Courts within the United States District Court for the Eastern District of Virginia have utilized two different tests for compelling arbitration under the FAA. *Compare Galloway*, 819 F.3d at 84, *with Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*, 861 F. Supp. 2d 724, 727 (E.D. Va. 2012) ("The Court should consider three factors in determining whether to enforce an arbitration agreement: (1) whether the parties consented to arbitration of their claim; (2) whether Congress intended to preclude arbitration in the circumstances of the case; and (3) whether arbitration provides a means to vindicate the claim that the plaintiffs have brought." (citing *Koridze v. Fannie Mae Corp.*, 593 F. Supp. 2d 863, 867 (E.D. Va. 2009))). This Court uses the test utilized by the United States Court of Appeals for the Fourth Circuit in 2016. In any event, the disposition of these motions would remain the same under either test.

5

interstate or foreign commerce, or QPS's failure, neglect, or refusal to arbitrate the dispute. QPS disputes only the second element by denying that a valid agreement to arbitrate the dispute exists. QPS contends that: (1) the Terms and Conditions do not constitute an agreement between the parties; and, (2) the Arbitration Clause does not cover the disputes.

Courts apply the following precepts when evaluating a motion to compel arbitration:

> While the Supreme Court has acknowledged a "liberal federal policy favoring arbitration," . . . it has also consistently held that [Section] 2 of the FAA reflects the "fundamental principle that arbitration is a matter of contract[ ]" . . . . Thus a court may order arbitration only when it "is satisfied that the parties agreed to arbitrate." . . . And the question of whether the parties agreed to arbitrate is resolved by application of state contract law.

*Craddock v. LeClairRyan, P.C.*, No. 3:16cv11, 2016 WL 1464562, at *3 (E.D. Va. Apr. 12, 2016) (omissions and second alteration in original) (quoting *Lorenzo v. Prime Commc'ns, L.P.*, 806 F.3d 777, 781 (4th Cir. 2015)). Therefore, the Court turns to South Carolina contract law[6] to determine whether the Terms and Conditions apply to QPS's claims.

### 1. The Parties Agreed to the Terms and Conditions

Under South Carolina law, the necessary elements for a contract are offer, acceptance, and valuable consideration. *Roberts v. Gaskins*, 486 S.E.2d 771, 773 (S.C. 1997). "A contract may arise from actual agreement of the parties manifested by words, oral or written, or by conduct." *Conner v. City of Forest Acres*, 611 S.E.2d 905, 912 (S.C. 2005); *see also Dowling v. Charleston & W.C. Ry. Co.*, 81 S.E. 313, 314 (S.C. 1913) ("The law implies a contract between persons where the ordinary course of dealing between them, considered in the light of all the circumstances, reasonably warrants the inference that they mutually intended to contract.").

---

[6] The parties agree that South Carolina law applies in this diversity action, at least for the purposes of the Motion to Compel Arbitration.

6

Here, the parties dispute whether QPS *accepted* the Terms and Conditions. AGY contends that "QPS accepted the [Terms and Conditions] by filling AGY's purchase orders and issuing invoices to AGY." (Def.'s Mem. Supp. Mot. Dismiss 8, ECF No. 6.) Specifically, AGY suggests that "the purchase orders' [Terms and Conditions] and the Arbitration Clause became part of the contract between AGY and QPS." (*Id.* at 8–9.) AGY's argument has merit.

The Complaint alleges, and neither party disputes for the purposes of the Motion to Compel Arbitration, that the individual purchase orders constitute separate contracts between the parties. (*See, e.g.*, Compl. ¶ 9 ("AGY . . . *contracted* with QPS to perform substantial portions of the structural and civil work required for the Project *by individual Purchase Orders* issued between approximately February 2015 and August 2015." (emphases added)).) Throughout the course of the project, AGY emailed nineteen purchase orders to QPS, each of which included the Terms and Conditions as "a separate attachment to the emails." (Starratt Decl. ¶ 9; *see also* Kessing Decl. ¶ 6 ("AGY electronically submitted AGY's Terms and Conditions . . . with each purchase order.").) Despite the attachments, following receipt of the Terms and Conditions, QPS did not discuss them with AGY—by stating an objection or otherwise. Instead, QPS would issue invoices to AGY for the work performed and accept AGY's offer, which seemingly included the attached Terms and Conditions.

QPS, however, argues that the parties agreed to no contract that included the Terms and Conditions. A QPS representative declares, and AGY does not dispute, that "[t]he purchase orders did not identify, mention, or refer in any way to any separate terms and conditions." (Starratt Decl. ¶ 9.) But the purchase order did not need to explicitly reference the separate attachment for that attachment—here, the Terms and Conditions—to become part of the parties' agreement. Indeed, a contract may arise from the parties' conduct. *See Conner*, 611 S.E.2d

at 912. Here, the record plainly reflects that, on nineteen different occasions: (1) AGY emailed QPS its Terms and Conditions in the same email as the purchase order; (2) QPS did not object to the Terms and Conditions or discuss them in any way; and, (3) QPS then issued an invoice to AGY.[7] At a minimum, under these circumstances, the Court finds that the Terms and Conditions applied to the agreement between AGY and QPS by implication. Accordingly, the Court finds that the parties agreed to the Arbitration Clause.

### 2. The Arbitration Clause Covers QPS's Claims

QPS argues in the alternative that, even if the Arbitration Clause applies to the purchase orders, it does not cover QPS's claims. QPS contends that "[t]he issues of price and payment terms . . . are expressly excluded from the scope of the Terms and Conditions." (Pl.'s Mem. Opp'n 6, ECF No. 8.) QPS misreads the scope of the Arbitration Clause.

The Arbitration Clause applies to "[a]ny dispute or cause of action the Buyer and Seller may have with one another *arising out of this agreement*" and provides that such a dispute "shall be finally settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association and in accordance with the substantive laws of the state of South Carolina, excluding the conflicts of law provisions of such laws." (AGY Terms and Conditions of Purchase ¶ 13 (emphasis added).) The scope of "this agreement," as identified in Paragraph 13, is outlined by Paragraph 1, which provides that the Terms and Conditions

---

[7] As support for the premise that QPS accepted the Terms and Conditions solely by a failure to object to them, AGY relies on South Carolina's version of Article 2 of the Uniform Commercial Code, which applies exclusively to the sale of goods. (Def.'s Mem. Supp. Mot. Dismiss 8–9 (citing S.C. Code § 36-2-207).) In opposition, QPS correctly points out that S.C. Code § 36-2-207 does not govern its claims because the unpaid invoices at issue pertain to *work performed*—not the sale of goods. Regardless, the record before the Court demonstrates that the parties agreed to the Terms and Conditions.

are applicable to all purchase orders and are the only terms and conditions applying to a sale of seller's goods and services except those which additionally relate to (i) price, (ii) quantity, (iii) delivery schedule, (iv) separate warranties, (v) payment terms and (vi) description and specifications of the goods and services, and Buyer hereby expressly rejects any terms and conditions proposed by Seller which are different from or in addition to the terms contained herein, unless expressly assented to in writing by Buyer.

(*Id.* ¶ 1.) According to QPS, the phrase "except those" narrows the scope of the disputes governed by the Terms of Conditions. QPS's reading misses the mark.

The following phrase comes before "except" in Paragraph 1 of the Terms and Conditions: "These terms and conditions of purchase are applicable to all purchase orders and are the only terms and conditions applying to the sale of seller's goods and services." (*Id.*) The sentence then continues: "except those which additionally relate to (i) price, (ii) quantity, (iii) delivery schedule, (iv) separate warranties, (v) payment terms and (vi) description and specifications of the goods and services." (*Id.*) Common sense dictates that the exception applies to the subject immediately preceding its use; *i.e.*, "the only terms and conditions applying to the sale of seller's goods and services." (*Id.*) The "last-antecedent" grammatical rule and canon of statutory interpretation supports this reading. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) ("[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."); *see also Sims' Lessee v. Irvine*, 3 U.S. (3 Dall.) 425, 444 n* (1799) ("The rule is, that 'such' applies to the last antecedent, unless the sense of the passage requires a different construction.").

Thus, "except" does not provide an exception to the Terms and Conditions' application "to all purchase orders," but provides an exception to the qualifier that the Terms and Conditions "are the only terms and conditions applying to the sale of seller's goods and services." (*Id.*) Stated differently, "except" clarifies that additional terms and conditions (those relating to the enumerated categories) could likewise apply "to all purchase orders." (*Id.*) Accordingly, the

9

Court finds that the Terms and Conditions—including the Arbitration Clause—apply to all claims arising out of purchase orders, including QPS's.

### C. The Court Will Exercise Its Discretion to Dismiss the Action

"A court may dismiss or stay a suit that is governed by the FAA." *Chronister v. Marks & Harrison, P.C.*, No. 3:11cv688, 2012 WL 966916, at *2 (E.D. Va. Mar. 21, 2012) (citing 9 U.S.C. § 3; *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001)). When a party seeks enforcement of an arbitration agreement in district court, the party sufficiently "invoke[s] the full spectrum of remedies under the FAA, including a stay under [9 U.S.C.] § 3." *Choice Hotels*, 252 F.3d at 710. However, if a court determines "that all of the issues presented are arbitrable, then it may dismiss the case." *Greenville Hosp. Sys. v. Emp. Welfare Ben. Plan for Emps. of Hazelhurst Mgmt. Co.*, 628 F. App'x 842, 845–46 (4th Cir. 2015) (citing *Choice Hotels*, 252 F.3d at 709–10). The law remains unsettled as to whether a court should stay or dismiss a case when all claims are subject to arbitration,[8] but no question exists that the Court has the discretion to take either option. *Choice Hotels*, 252 F.3d at 709–10. Here, because the Court has found that all of QPS's claims are subject to arbitration, it will exercise its discretion to dismiss the case without prejudice.

---

[8] As the Fourth Circuit noted:

> There may be some tension between our decision in [*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999)]—indicating that a stay is required when the arbitration agreement "covers the matter in dispute"—and *Choice Hotels*—sanctioning dismissal "when all of the issues presented . . . are arbitrable." Our sister circuits are divided on whether a district court has discretion to dismiss rather than stay an action subject to arbitration.

*Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012).

### III. Conclusion

For the foregoing reasons, the Court will grant the Motion to Compel Arbitration and deny as moot the Motion to Dismiss or Transfer. The Court will dismiss the action without prejudice.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 6/7/17